UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NICHOLAS M. MARTIN and DIEGO I. FRAUSTO, *Plaintiffs*, v. FRANK J. SICILIANO and OVERBROOK MANAGEMENT CORPORATION *Defendants* | No. 22 CV 2344 Judge Lindsay C. Jenkins |

### ORDER

Plaintiffs Nicholas M. Martin ("Martin") and Diego I. Frausto ("Frausto") bring this action against Defendants Frank J. Siciliano ("Siciliano") and Overbrook Management Corporation ("Overbrook") for damages arising out of Siciliano's alleged campaign to psychologically manipulate and harass Plaintiffs and invade their privacy. Currently before the Court is Defendants' motion to dismiss the complaint for failure to state a claim [Dkt. 18]. For the following reasons, the motion is granted in part and denied in part.

### I. Background

The following facts are taken from Plaintiffs' complaint [Dkt. 1] and assumed to be true for purposes of Defendants' motion to dismiss. *Roe v. Dettlebach*, 59 F.4th 255, 262 (7th Cir. 2023). Plaintiffs Martin and Frausto, who both live in this judicial district, have been in a long term committed relationship since 2009. In October 2020, Plaintiffs met Defendant Siciliano while playing tennis at a fitness club in Chicago. Martin and Siciliano struck up a friendship due to their shared interest in tennis. As time passed, Siciliano allegedly began "a months-long campaign of incremental psychological manipulation and harassment." [Dkt. 1, ¶ 18.] According to the complaint, Siciliano employed a psychologically manipulative tactic know as "gaslighting" to cause Martin to doubt his perceptions, experiences, and understanding of events. [*Id.*, ¶ 19.]

According to the Complaint, one gaslighting method that Siciliano allegedly used was hiding Martin's items and then feigning ignorance when asked if he knew where they went. For example, in March 2021, Martin and Siciliano attended a week-

long tennis clinic in California. For three consecutive days, Siciliano removed a lacrosse ball from Martin's tennis bag, without Martin's knowledge, so that Martin was unable to use the ball to release tightness in his back muscles, as his doctor had recommended. Siciliano surreptitiously replaced the ball in Martin's bag at the end of each day, leading Martin to wonder aloud to Siciliano if he "might be going crazy." [Dkt. 1, ¶¶ 21, 22.] In another example, in April 2021, Siciliano allegedly secretly stole a pair of underwear out of Martin's gym locker so Martin could not wear them after he showered. [*Id.*, ¶ 24.]

Siciliano also allegedly began manipulating and harassing Martin at his office in downtown Chicago. In February 2021, Siciliano became aware that an office was available in the office suite rented by Martin's employer. [*Id.*, ¶ 26.] Siciliano's company, Overbrook, entered into a month-to-month office sharing agreement with Martin's employer. Siciliano began using the office in March 2021. [*Id.*, ¶¶ 28, 29.] Within a few months, "unusual things began to happen to Martin at work." [*Id.*, ¶ 30.] For instance, in May 2021, Siciliano entered Martin's office without Martin's knowledge, stole his lunch container, and then feigned ignorance when Martin went looking for it. [*Id.*, ¶ 31.]

On June 22, 2021, Siciliano stayed late in the office. After everyone else had left for the day, Siciliano allegedly "deposited urine on the carpet underneath Martin's desk." [Dkt. 1, at ¶ 32.] When Martin came to work on June 23, he "immediately discovered that there was a strong urine smell emanating from his socks and underneath his desk" and there was a yellow stain on the carpet. [*Id.*, ¶ 33.] On June 30, 2021, Siciliano once again waited for everyone to leave and then deposited urine on the carpet underneath Martin's desk. [*Id.*, ¶ 35.] Martin discovered the smell on July 1, 2021. He spoke with the manager of the office's cleaning staff and learned that "they had noticed there was a liquid on the carpet a few times over the course of the previous month and that the cleaning staff had been cleaning it." [*Id.* ¶ 37.] But the urine smell and stain persisted. [*Id.*, ¶ 38.]

In July 2021, Siciliano allegedly falsely claimed to Martin that someone had stolen coasters from Siciliano's office on two different days. Siciliano allegedly did this to dispel suspicion by showing that he, too, was a target of unusual activity in the office. [Id., ¶ 39.] On August 25, 2021, Siciliano allegedly deposited urine under Martin's desk yet again. [*Id.*, ¶ 41.] When Martin went to work on August 26, he discovered that the carpet had been shampooed and learned from the manager of the cleaning crew that the crew had noticed liquid under Martin's desk the previous night. [*Id.*, ¶ 42.]

According to the complaint, "Siciliano realized he was not being suspected of all the unusual things that were occurring at the office," "became emboldened," and "decided to terrorize Martin and Frausto in their home." [Dkt. 1, ¶ 43.] On August 31, 2021, Siciliano allegedly stole Frausto's car keys and house keys out of his gym locker

while he was showering. Siciliano was aware that Martin and Frausto would not be home the next afternoon and used the opportunity to enter their condo unit for approximately 15 minutes, without their knowledge. [*Id.*, ¶¶ 48, 51.] Siciliano entered the condo again on September 9 and September 10, 2021, without Martin and Frausto's knowledge. At some point when he was in the condo, Siciliano allegedly placed an audio recording device under Martin and Frausto's bed and stole a pair of Frausto's suspenders. [*Id.*, ¶¶ 57-66.] On September 11, 2021, while Frausto was busy trying to find the suspenders to wear to a wedding that night, Siciliano surreptitiously removed the recording device. [*Id.*, ¶ 67.]

On September 13, 2021, Siciliano called Martin and told him "there was something very serious he needed to talk about but couldn't tell him at the office." [Dkt. 1, ¶ 68.] Martin went to Siciliano's home. Siciliano told Martin that at the recent wedding reception, he "had overheard Frausto bragging to a friend sitting next to him at the table that he had engaged in a certain sexual act with someone other than Martin." [*Id.*] Siciliano knew this was false and would cause "a great deal of friction and chaos in the relationship between Martin and Frausto." [*Id.*, ¶ 69.] At Siciliano's encouragement, Martin confronted Frausto, creating a "deep schism" in their relationship. [*Id.*, ¶¶ 70, 71.]

On September 26, 2021, Siciliano, knowing the couple would be away, entered Martin and Frausto's home two more times without their permission. [Dkt. 1, ¶ 73.] On the second visit, Siciliano placed an empty condom wrapper under their bed. [*Id.*, ¶ 75.] Siciliano "did this as he knew Martin would be disassembling the bed that week and intended for Martin to find it and deduce that it was a result of the sexual act that Siciliano had falsely stated Frausto had bragged about." [*Id.*] Martin discovered the condom wrapper and thought it belonged to Frausto, which further damaged the couple's relationship. [*Id.*, ¶ 77.]

Soon after, Siciliano allegedly resumed harassing Martin in the office. On October 14, 2021, Siciliano, aware that he and Martin would be the only ones in the office that day, "released a noxious chemical odor throughout the office." [Dkt. 1, ¶ 80.] When Martin arrived at the office, the "smell was unbearable" and "it felt like his lungs were under attack," but "Siciliano feigned ignorance" of the cause of the smell. [*Id.*] Then, in late October or early November, Siciliano went into Martin's office while Martin was away and hid a chemical air freshener under Martin's desk, knowing that such odors caused Martin to suffer headaches and dizziness. Siciliano also continued hiding and tampering with Martin's possessions in the office. [*Id.*, ¶ 82-83.]

In early December 2021, Martin traveled to Rhode Island "to assist his employer in boxing holiday gifts to be sent to clients." [Dkt. 1, ¶ 89.] Siciliano was also in Rhode Island during this period, for unspecified reasons. After returning from Rhode Island on December 6, 2021, Martin discovered that Siciliano had accessed his

3

laptop, without permission, during the trip." [*Id.*, ¶ 90.] As a result of this discovery, "Martin and Frausto came to understand that Siciliano was not the person he appeared to be and was directly responsible for all of the previously unexplained events" outlined in the complaint. [*Id.*, ¶ 93.] They were "shocked, humiliated and severely emotionally distressed upon discovering that Siciliano had been psychologically manipulating them for many months, been in their home at least five times without their permission, recorded their conversations, and had accessed their electronic devices." [*Id.*, ¶ 94.]

Based on these factual allegations, Plaintiffs brings eleven claims against Siciliano. Plaintiffs allege federal claims for violation of the Electronic Communications Privacy Act (Count I) and the Stored Communications Act (Count VIII). They also bring claims under Illinois law for violation of Illinois' eavesdropping law, 720 ILCS 5/14-1 *et seq.* (Count II); intrusion upon seclusion (Count III); intentional infliction of emotional distress (Count IV); trespass (Count V); conversion (Count VI); and defamation *per se* (Count VII). Further, Plaintiffs bring three claims under the laws of other states to which Siciliano traveled: unauthorized use of a computer and computer trespass in violation of New York law (Count IX); computer crimes in violation of Rhode Island law (Count X); and violation of the right to privacy under the Rhode Island General Laws (Count XI). Finally, Plaintiffs bring a claim against Overbrook for negligent supervision (Count XII). Defendants move to dismiss all of Plaintiffs' claims.

## II. Legal Standards

Defendants move to dismiss the complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Rule 12(b)(1) "permits the dismissal of complaints over which the court may not exercise subject matter jurisdiction." *Boldt v. Jaddou*, -- F. Supp. 3d --, 2023 WL 355171 (N.D. Ill. Jan. 23, 2023). Defendant raises a facial challenge to subject matter jurisdiction by arguing that Plaintiffs have not pled sufficient facts to establish diversity jurisdiction. In deciding that portion of the motion to dismiss, the court "accept[s] all well-pleaded factual allegations as true and draw[s] all reasonable inferences in favor of the plaintiff." *Silha v. ACT, Inc.*, 807 F.3d 169, 173 (7th Cir. 2015). Plaintiff bears the burden of proving that the Court has jurisdiction. See *Ware v. Best Buy Stores, L.P.*, 6 F.4th 726, 731 (7th Cir. 2021).

A Rule 12(b)(6) motion to dismiss challenges the sufficiency of the complaint. "Plausibility is the basic test for pleadings on a motion to dismiss." *Hughes v. Northwestern Univ.*, 63 F.4th 615, 628 (7th Cir. 2023). "To avoid dismissal, the complaint must 'state a claim to relief that is plausible on its face.'" *Kap Holdings, LLC v. Mar-Cone Appliance Parts Co.*, 55 F.4th 517, 523 (7th Cir. 2022) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "There is no rigid reference point for the plausibility inquiry; the determination is context-specific and 'requires the reviewing court to draw on its judicial experience and common sense.'" *Id.* at 523-24 (quoting

*Iqbal*, 556 U.S. at 679). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The Court "must accept all well-pleaded facts as true and draw reasonable inferences in the plaintiff's favor." *Hughes*, 63 F.4th at 629-30. The Court reads the complaint and assesses its plausibility as a whole. See *Atkins v. City of Chicago*, 631 F.3d 823, 832 (7th Cir. 2011).

"Ordinarily, when adjudicating a motion to dismiss under Rule 12(b)(6), a district court is limited to the allegations of the complaint." *Financial Fiduciaries, LLC v. Gannett Co.*, 46 F.4th 654, 663 (7th Cir. 2022). If the Court considers "matters outside the pleadings," the "motion must be treated as one for summary judgment." Fed. R. Civ. P. 12(d). However, "there is an exception under which a court may consider documents that are (1) referenced in the plaintiff's complaint, (2) concededly authentic, and (3) central to the plaintiff's claim" without converting the motion to dismiss into a motion for summary judgment. *Financial Fiduciaries*, 46 F.4th at 663. The purpose of this "incorporation-by-reference doctrine" is to "prevent[] a plaintiff from 'evad[ing] dismissal under Rule 12(b)(6) simply by failing to attach to his complaint a document that prove[s] his claim has no merit.'" *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012) (quoting *Tierney v. Vahle*, 304 F.3d 734, 738 (7th Cir. 2002)).

### III. Analysis

Defendants make three arguments in support of dismissing Plaintiffs' complaint, one under Rule 12(b)(1) and two under Rule 12(b)(6). The Court considers the 12(b)(1) argument first because it raises a "threshold issue" of subject matter jurisdiction, which "must be addressed prior to the merits of the underlying claims." *Reverse Mortgage Solutions, Inc. v. U.S. Dept. of Housing & Urban Dev.*, 365 F. Supp. 3d 931, 940 (N.D. Ill. 2019) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95 (1998)).

#### A. Jurisdiction

Defendants move to dismiss the complaint on the basis that Plaintiffs "fail to provide any basis for damages" and therefore cannot demonstrate "how they meet the $75,000 jurisdictional threshold." [Dkt. 19 at 5.] The Court finds it unnecessary to assess the sufficiency of Plaintiffs' damages allegations, however, because Defendants have challenged only one of the two jurisdictional grounds asserted by Plaintiffs: diversity. The complaint also alleges that the Court "has federal question jurisdiction over plaintiffs' claims that arise under the [federal] Electronic Communications Privacy Act … and the Stored Communications Act" and "supplemental jurisdiction over Plaintiffs' claims that arise under state law." [Dkt. 1, ¶ 5.] Plaintiffs are correct that pursuant to 28 U.S.C. § 1331, the Court has "original

jurisdiction" over the two federal claims, which "aris[e] under the … laws … of the United States." See *Atlantic Richfield Co. v. Christian*, 140 S. Ct. 1335, 1350 (U.S. 2020) ("In the mine run of cases, '[a] suit arises under the law that creates the cause of action.'" (quoting *American Well Works Co. v. Layne & Bowler Co.*, 241 U.S. 257, 260 (1916))). And pursuant to 28 U.S.C. § 1367, the Court has supplemental jurisdiction over the state law claims because the federal and state claims "derive from a common nucleus of operative facts," *Satkar Hospitality Inc. v. Cook County Bd. of Review*, 819 F. Supp. 2d 727, 738 (N.D. Ill. 2011), and therefore "form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). Defendants' motion to dismiss on jurisdictional grounds is therefore denied.

### B. Siciliano

Defendants move to dismiss all of the claims against Siciliano on the basis of an alleged oral agreement between Siciliano and Plaintiffs. Although no oral agreement is mentioned in the complaint, Defendants offer Siciliano's sworn declaration to establish its purported contents. See [Dkt. 19-1.] Siciliano states that in December 2021, his friendship with Martin and Frausto "deteriorated after Martin accused [him] of: (1) entering his apartment without permission, (2) placing and then … removing a recording device in his apartment without his knowledge, (3) accessing their mobile device and computer without permission, (4) removing personal possessions without permission, and (5) making false statements about Frausto and Martin's relationship." [*Id.*, ¶ 7.] Siciliano further states that around December 11, 2021, "Plaintiffs, through Martin, made an oral offer that if [Siciliano] agreed to move out of state, they would not discuss these events again." [*Id.*, ¶ 8.] Siciliano claims that he accepted this offer and, in reliance, sold his condominium unit at a loss and relocated to New York state. [*Id.*, ¶¶ 9-13]. Siciliano accuses Plaintiffs of breaching the terms of the oral agreement by bringing this action. [*Id.*, ¶ 14.]

The Court denies Defendants' motion to dismiss based on the alleged oral contract, for two simple reasons. First, the oral agreement is not properly before the Court on a motion to dismiss. "A defendant filing a motion under Rule 12(b)(6) … can base its motion on only 'the complaint itself, documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice.'" *Kuebler v. Vectren Corp.*, 13 F.4th 631, 636 (7th Cir. 2021) ) (citing *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012)). The oral agreement is not attached to the complaint (being oral), nor is it referred to in the complaint. Additionally, the oral agreement is not "concededly authentic," *Financial Fiduciaries*, 46 F.4th at 663, as both Plaintiffs have submitted their own declarations categorically denying the existence of a settlement agreement. [See Dkt. 28 at 7; Dkt. 28-1 (Frausto declaration); Dkt. 28-2 (Martin declaration).]

6

Second, even if the alleged oral agreement was properly before the Court, it would not warrant dismissing the claims against Siciliano because Defendants never identify a legal theory under which the oral agreement would absolve Siciliano of the misconduct alleged in Counts I through XI of the complaint. "Seventh Circuit precedent is clear that 'perfunctory and undeveloped arguments, as well as arguments that are unsupported by pertinent authority, are waived.'" *Rock Hemp Corp. v. Dunn*, 51 F.4th 693, 704 (7th Cir. 2022) (citing *White v. United States*, 8 F.4th 547, 552 (7th Cir. 2021)). In their response to the motion to dismiss, Plaintiffs speculate that Defendants intend to assert the affirmative defense of release. [See Dkt. 28 at 3.] But it is not Plaintiff's obligation, just like it is not the Court's obligation, "to research and construct the legal arguments open to" Defendants. *United States v. Lee*, 436 F.3d 751, 760 (7th Cir. 2006).

In their reply brief, Defendants claim that the Court has "inherent power" to consider their request to enforce the settlement agreement, and that the use of this power is "particularly appropriate" here, because "the costs of litigating this matter far exceed the value of this case" and because Plaintiffs' declarations provide "evidence that there was a discussion of a settlement agreement." [Dkt. 32 at 3.] Defendants request in the alternative that the Court "hold an evidentiary hearing to determine whether there was a settlement agreement and what terms applied to the agreement." [*Id.* at 4.] These arguments are not properly before the Court in the context of a motion to dismiss. A Rule 12(b)(6) motion is designed to test the sufficiency of the complaint, not to decide the merits of the plaintiff's case or how burdensome it will be to litigate. If Defendants believe that the cost of litigating the case exceeds its value, then they should engage in settlement discussions and try to end the litigation as soon as possible. But the Court will not short-circuit Plaintiffs' right to litigate their claims based on Defendants' disputed representations about a purported oral settlement agreement.

For these reasons, Defendants' motion to dismiss is denied as to Counts I through XI of the complaint.

### C. Overbrook

Finally, the Court considers Defendants' motion to dismiss the negligent supervision claim against Overbrook (Count XII). Under Illinois law, the elements of a claim for negligent supervision are: "(1) the defendant had a duty to supervise the harming party, (2) the defendant negligently supervised the harming party, and (3) such negligence proximately caused the plaintiff's injuries." *Doe v. Coe*, 135 N.E.3d 1, 15 (Ill. Sup. Ct. 2019); see also *id.* at 16 ("agree[ing] with the elements laid out by the appellate court").

In their claim for negligent supervision, Plaintiffs allege that "[a]fter Overbrook entered into an office sharing agreement with Martin's employer,

7

Overbrook had a duty to supervise its employee, Siciliano." [Dkt. 1, ¶ 177.] Overbrook allegedly failed to supervise Siciliano during his "months-long campaign of harassment against Martin in the office." [*Id.*, ¶ 178.] Martin suffered emotional distress as a result of Siciliano's harassment [*id.*, ¶ 179], and "Martin's damages were proximately caused by Overbrook's failure to supervise Siciliano." [*Id.*, ¶ 180.]

Defendants move to dismiss, arguing that Plaintiffs fail to adequately allege that Overbrook had a duty to supervise Siciliano or that Overbrook's failure to supervise proximately caused Plaintiff's injuries. As to duty, Defendants argue that "[t]here are no allegations that Siciliano's alleged actions were foreseeable or that there are any factors that would impose a duty on Overbrook to supervise Siciliano in these circumstances." [Dkt. 32 at 4-5]. However, as the Illinois Supreme Court recognized in *Coe*, "[a]n employer's duty to supervise is general in nature." 135 N.E.3d at 16. "An employer has a duty to supervise all employees," which includes "a duty to generally supervise her employees to make sure that they engage in appropriate behavior and follow the law and the employer's rules." *Id.* The extent to which the employer must supervise "depends on many factors, such as the work performed, the employees performing it, the size of the business, the type of work, and the employer's clientele, among others." *Id.* Further, a claim for negligent supervision in the employment context requires only "general foreseeability" to "impose a duty to supervise." *Id.* at 17. This is in contrast to claims against employers for negligent hiring or retention, which require as part of the duty analysis that the plaintiff show that the employee was unfit in a particular manner that rendered the plaintiff's injury foreseeable to a person of ordinary prudence in the employer's position. *Id.* at 14, 17. Explaining this distinction, the *Coe* court reasoned that "[a]lthough prior notice might sometimes be a factor in determining whether a supervisor reasonably performed her duty, to always require prior notice of the particular unfitness as an element of the duty analysis would be to extinguish this cause of action in many circumstances." *Id.* at 17.

Plaintiffs have said enough about duty for pleading purposes by alleging that "[a]fter Overbrook entered into an office sharing agreement with Martin's employer, Overbrook had a duty to supervise its employee, Siciliano." [Dkt. 1, ¶ 177; see also Dkt. 28 at 7 ("Overbrook had a duty to supervise Siciliano because he was its employee working in an office sharing environment that Overbrook had leased."). The parties do not brief whether misconduct of the type alleged by Plaintiffs would be "generally foreseeable" to an employer that fails to supervise an employee using a shared workspace. The only case the parties cite on this topic is *Coe*, which arose in a different factual context. In that case, parents of a minor brought suit against a church for negligent supervision after their daughter was sexually assaulted by the church's director. The Illinois Supreme Court agreed with the state appellate court

8

that it was "generally foreseeable that abuse could occur in programs providing adults with unsupervised access to children." 135 N.E.3d at 17. *Coe* does not address more generally what types of misconduct might be "generally foreseeable" to an employer who fails to supervise its employees. But given *Coe*'s statement that an employer has "a duty to generally supervise her employees to make sure that they engage in appropriate behavior and follow the law and the employer's rules," 135 N.E.3d at 17, the Court concludes that Plaintiffs' "duty" theory is plausible and declines to dismiss the negligent supervision claim based on that element of the claim.

Defendants' argument concerning proximate cause is more convincing. "The term 'proximate cause' is shorthand for a concept: Injuries have countless causes, and not all should give rise to legal liability." *CSX Transp., Inc. v. McBride*, 564 U.S. 685, 692 (2011). To plead causation under Illinois negligence law, "a plaintiff must allege that an injury proximately resulted from a breach of a duty." *Boyd v. Travelers Ins. Co.*, 652 N.E.2d 267, 271 (Ill. Sup. Ct. 1995); see also *Beul v. ASSE Int'l, Inc.*, 233 F.3d 441, 447 (7th Cir. 2000) ("Where "there [i]s no causal relation between the defendant's negligence and the plaintiff's harm, there [i]s no tort."). "Proximate causation has 'two distinct requirements: cause in fact and legal cause.'" *Kogut v. United States*, 573 F. Supp. 3d 1277, 1294 (N.D. Ill. 2021) (quoting *Lee v. Chicago Transit Auth.*, 605 N.E.2d 493, 503 (1992)). "Cause in fact can only be established when there is a reasonable certainty that a defendant's acts caused the injury or damage." *Lee*, 605 N.E.2d at 502. Under Illinois' "substantial factor test," "the defendant's conduct is a factual cause of the plaintiff's injury if the conduct was a material element and a substantial factor in bringing about the injury." *Id.*; see also *Mayorov v. United States*, 84 F. Supp. 3d 678, 703 (N.D. Ill. 2015). "Legal cause," in contrast, "'is essentially a question of foreseeability: a negligent act is a proximate cause of an injury if the injury is of a type which a reasonable man would see as a likely result of his conduct.'" *Lee*, 605 N.E.2d at 503 (quoting *Masotti v. Console*, 552 N.E.2d 1292, 1297 (Ill. App. 1990)).

The only allegation in the complaint addressing proximate cause is paragraph 180, which alleges that "Martin's damages were proximately caused by Overbrook's failure to supervise Siciliano." [Dkt. 1, ¶ 180.] This allegation is a "[t]hreadbare recital" of the proximate cause element, unsupported by any factual allegations, and therefore "do[es] not suffice" to survive a Rule 12(b)(6) motion. *Iqbal*. *Peterson v. Wexford Health Sources, Inc.*, 986 F.3d 746, 751 (7th Cir. 2021). There is simply no "factual content" from which the Court could "draw the reasonable inference" that if Overbrook had supervised Siciliano, Martin's injury would not have occurred. *Iqbal*, 556 U.S. at 678. Rather, the complaint alleges that Martin met Siciliano at a Chicago fitness club in October 2020, and the parties were friends before Siciliano asked

9

Martin to "inquire of Martin's employer" whether Overbrook could lease a vacant office in Martin's employer's suite. [Dkt. 1, ¶ 27.] The complaint characterizes Siciliano's conduct as surreptitious, with no one in the office suspecting him of misconduct that lasted from May to August 2021, and resumed in October and November 2021. According to the complaint, Siciliano took Martin's lunch container while Martin was away from his office [*id.*, ¶ 31], deposited urine under Martin's desk after everyone else had left for the evening [*id.*, ¶¶ 32, 35, 41], released a noxious chemical before anyone else was in the office [*id.*, ¶ 80], and entered Martin's office while he was away to hide a chemical air freshener [*id.*, ¶ 83]. The complaint contains no suggestion how Overbrook should have been supervising Martin while he used the shared office or how supervision would have prevented Siciliano's clandestine misconduct.

Plaintiffs' only direct response on the proximate cause issue is that "[t]he question of determining proximate cause in negligence cases is typically left to the trier of fact." [Dkt. 28 at 7 (citing *Heastie v. Roberts*, 877 N.E.2d 1064, 1083 (Ill. Sup. Ct. 2007)).] While that is true, it does not absolve Plaintiffs at the pleading stage of stating a claim to relief that is "plausible on its face." *Iqbal*, 556 U.S. at 678. This requires the complaint to contain sufficient "factual content" to "allow[] the court to draw the reasonable inference" that Overbrook is liable for" Siciliano's conduct. *Id.*; see, e.g., *Herrera v. Di Meo Brothers, Inc.*, 529 F. Supp. 3d 819, 832-33 (N.D. Ill. 2021) (plaintiff failed to state a claim against his former employer for negligent supervision where complaint did not allege any facts plausibly tying defendants' negligent supervision of other employees to the vandalism of plaintiff's personal vehicle at his workplace); cf. *Boyd*, 652 N.E.2d at 271 (requiring plaintiff in negligence action involving the loss or destruction of evidence to "allege sufficient facts to support a claim that the loss or destruction of the evidence caused the plaintiff to be unable to prove an underlying lawsuit"); *Barham v. Knickrehm*, 661 N.E.2d 1166, 1039-40 (Ill. App. 1996) (in negligence action brought by mother of child injured in defendants' pool, plaintiffs failed to allege facts supporting allegation of proximate cause, where complaint contained no allegations how the injuries actually occurred or that any of the alleged negligent acts or omissions produced the injuries through natural and continuous sequence of events unbroken by any effective intervening cause). The negligent supervision claim as currently pled does not satisfy the plausibility standard and, therefore, Defendants' motion to dismiss is granted as to Count XII only.

## IV. Conclusion

For these reasons, Defendants' motion to dismiss [Dkt. 18] is granted in part and denied in part. The motion is denied as to Counts I through XI against Siciliano. It is granted without prejudice to an amendment as to Count XII against Overbrook for negligent supervision. If Plaintiffs wish to file an amended complaint with a revised claim for negligent supervision and believe they can do so consistent with this opinion and Rule 11, they are given until May 24, 2023, to do so. The matter remains referred to Judge Weisman for discovery and settlement supervision.

Enter: 22-cv-2344
Date: May 9, 2023

_____
Lindsay C. Jenkins
United States District Judge